IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:22-cv-00564-RMR-SBP

C.P.C., a minor, by and through his parent, Jon Caldara,

    Plaintiff,

v.

BOULDER VALLEY SCHOOL DISTRICT RE-2,

    Defendant.

## ORDER

This matter is before the Court on the Complaint (ECF 1) and Opening Brief (ECF 26) of Plaintiff C.P.C., a minor, by and through his parent, Jon Caldara ("Plaintiff" or the "Parent"). Plaintiff appeals the decision of the State of Colorado, Office of Administrative Courts, wherein the administrative law judge ("ALJ") concluded that Defendant Boulder Valley School District ("Defendant" or the "District") did not violate the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* For the reasons that follow, the decision of the ALJ is **AFFIRMED**.

### I.    BACKGROUND

This is a special education action brought pursuant to 20 U.S.C. § 1415(i)(2)(A) of the IDEA for review of an administrative decision regarding C.P.C.'s educational program. During the 2019–20 school year, C.P.C. was a fifteen-year-old tenth grade student who attended Boulder High School in the District. ECF 71-1 at 239 (Administrative Record)

[hereinafter R. at 239].[1] C.P.C. has Down's Syndrome, intellectual impairments, and language impairments. *Id*. Due to these disabilities, C.P.C. qualifies for "special education and related services" under the IDEA. 20 U.S.C. § 1400(d)(1)(A).

The IDEA provides federal funds to states to help them educate children with disabilities. *Endrew F. ex. Rel. Joseph F. v. Douglas County School Dist. RE-1*, 137 S. Ct. 988, 993 (2017). In exchange, the recipient states pledge to provide a "free appropriate public education," or "FAPE," to all eligible children. 20 U.S.C. § 1412(a)(1). To ensure that eligible children receive a FAPE, the IDEA requires the local education agency to develop an "individualized education plan," or "IEP" – a comprehensive written plan, prepared by the child's teachers, parents, and other educators, which is designed to ensure that the child's education is "tailored to [his] unique needs." *Board of Educ. v. Rowley*, 458 U.S. 176, 181 (1982). To meet its obligations under the IDEA, a school district must "offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 999.

As pertinent here, C.P.C. received special education and related services through an IEP dated February 20, 2020, with six main goals in the areas of writing, language, vocational/career skills, reading, math, and independent living skills. R. at 239–42. C.P.C.'s IEP included direct specialized instruction from a special education teacher and a speech language pathologist to help him accomplish his IEP goals and access general education. *Id*. at 283. Ultimately, his IEP specified that he would receive his educational

---

[1] When citing to the Administrative Record ("R."), the Court uses the page number found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the Electronic Court Filing ("ECF") system.

2

services in the general education setting for 47.3% of his school day, and 52.7% outside of his school day. *Id*. at 242. In consideration of the needs and services identified in his IEP, C.P.C. attended the Intensive Learning Community ("ILC"), which is a specialized program at Boulder High School designed to serve students with significant needs, typically including students with intellectual disabilities. *Id*. at 531.

District schools closed for Spring Break on March 13, 2020. *Id.* at 249. On March 18, 2020, Governor Jared Polis issued Executive Order D 2020 007 ordering the suspension of "normal in-person instruction from March 23, 2020, through April 17, 2020." *Id*. at 252. On March 28, 2020, the District communicated with District parents that educational services would be delivered via an online/remote learning environment until further notice. *Id*. at 249. On April 17, 2020, Governor Jared Polis issued Executive Order D 2020 041 extending school closures to in-person instruction through the summer of 2020. *Id*. at 252. All District students, including students with disabilities and without disabilities, received remote instruction because in-person instruction was prohibited. *Id*. at 640. Plaintiff participated in an Extended School Year during the summer of 2020. *Id*. at 542.

Entering the 2020–21 school year, the District developed a five-phase plan for returning to in-person learning. *Id*. at 250. Phase 1 required all learning to be conducted on-line. *Id*. The District sent written notice to each family of students with disabilities explaining how each student's IEP would be implemented during school closures. *See id*. at 314–315. On August 26, 2020, C.P.C.'s IEP was amended to add the District's

3

Contingency Plan for service delivery, which explained how his IEP would be implemented in each reentry phase. *Id*. at 244.

During the 2020–21 school year, C.P.C.'s schedule included 75 minutes of general education physical education, followed by 75 minutes of specialized instruction, 40 minutes of lunch, 75 minutes of specialized math instruction, and finally a 75-minute class period in his ILC class. *Id*. at 342. After his final class period, C.P.C. had a 45-minute advisory period where he joined his general education peers. *Id*. P.E., lunch, and advisory are the periods in which C.P.C. participated with general education peers. *Id*. Through the end of August and early September, C.P.C. continued to receive remote instruction as the District remained in Phase 1. On September 8, 2020, the District moved into Phase 2, which allowed students with the most significant needs to receive in-person instruction in small groups twice per week. *Id*. at 250. C.P.C. accessed school in person for four days per week beginning September 29, 2020. *Id*. at 250, 286.

On April 22, 2021, C.P.C.'s Parent filed a complaint with the Colorado Department of Education and the School District's Special Education Director in accordance with the IDEA's dispute resolution procedures. *See* 20 U.S.C. §§ 1415(f)(1)(A), (g). C.P.C.'s Parent generally alleged that C.P.C. was denied a free appropriate public education from March 2020 through December 2020 when the District closed schools as a result of the COVID-19 pandemic and required all students to receive general and special education supports in a remote setting. R. at 1–6. In addition, the Parent alleged that the District effected a change in C.P.C.'s educational placement according to the IDEA by moving him to online-only instruction in March 2020, and therefore the District violated the IDEA

4

because it failed to: (1) provide prior written notice of the change in placement; (2) provide the Parent an opportunity to meaningfully participate in the decision to change C.P.C.'s placement; and (3) educate C.P.C. in the least restrictive environment ("LRE"). *Id*. The matter proceeded to a due process hearing before an ALJ on October 26–29, 2021, at which both sides presented evidence and testimony. *Id*. at 236. Following the conclusion of the hearing, the ALJ ruled in favor of the District on all issues. *Id*. at 251–60. Plaintiff now appeals the ALJ's ruling. The matter is fully briefed and ripe for disposition.

## II.     STANDARD OF REVIEW

"The IDEA sets up a unique standard for a federal court's review of the administrative due process hearing." *L.B. ex rel. K.B. v. Nebo Sch. Dist*., 379 F.3d 966, 973 (10th Cir. 2004) (citing 20 U.S.C. § 1415(i)(2)). Specifically, the IDEA requires the district court to engage in a "modified *de novo* review," independently reviewing the evidence in the administrative record and reaching a decision by a preponderance of the evidence. *Murray v. Montrose Cty. Sch. Dist. RE-1J*, 51 F.3d 921, 927 (10th Cir. 1995). Though the review is *de novo*, the Supreme Court has held that a district court must give "due weight" to the administrative proceedings and consider the ALJ's factual findings to be "*prima facie* correct." *Garcia v. Bd. of Educ. of Albuquerque Pub. Sch*., 520 F.3d 1116, 1125 (10th Cir. 2008) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). The party challenging the ALJ's decision bears the burden of persuading the Court that the ALJ's decision should be reversed. *Jefferson County School Dist. R-1 v. Elezabeth E. ex rel Roxanne B.*, 798 F. Supp. 2d 1177 (D. Colo. 2011).

### III.   ANALYSIS

Plaintiff contends that the ALJ erred in concluding that the District offered C.P.C. a FAPE and requests that the Court reverse the ALJ's decision and award Plaintiff compensatory education and attorney fees.

As an initial matter, the Court notes that Plaintiff's arguments are largely devoid of specificity and support, which hampers the Court's ability to conduct a meaningful and efficient review of the ALJ's decision. For example, while Plaintiff lists a number of circumstances that may give rise to an IDEA violation, *see* ECF 26 at 3–6, Plaintiff does not tie any of the cited case law to the facts of this case, nor does he clearly articulate the basis for his position that the ALJ's decision was erroneous. Indeed, Plaintiff cites to almost no legal authority throughout his substantive arguments, with sporadic and largely cursory citations to the record. The principle of party presentation is a fundamental premise of our adversarial system. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). "[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id*. (quotations and citation omitted). "In other words, 'courts do not sit as self-directed boards of legal inquiry and research.'" *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 885 (10th Cir. 2021) (quoting *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 147 n.10 (2011)). As a general rule, "our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Sineneng-Smith*, 140 S. Ct. at 1579 (internal quotations and alterations omitted). The Court is not obligated to perform legal research on behalf of

6

the Plaintiff or scour the record for evidence to support his claims, nor will the Court make arguments for the Plaintiff that he himself has not raised. With the foregoing limitations and principles in mind, the Court addresses Plaintiff's arguments below.

### A. Denial of FAPE

In order to show that a school district denied FAPE for failure to implement a child's IEP, a plaintiff must be able to demonstrate a material failure to implement a child's IEP. *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 815 (9th Cir. 2007). Minor discrepancies between the services provided and those identified in an IEP do not amount to a denial of FAPE. *See I.Z.M. v. Rosemount-Apple Valley-Eagen Pub. Schs.*, 863 F.3d 966, 969–70 (8th Cir. 2017).

As best the Court can tell, Plaintiff makes four primary arguments in support of his assertion that C.P.C.'s IEP was not implemented: (1) C.P.C. would not engage in online instruction and "it took constant prodding to bring him back to this online learning;" (2) he was not provided services to the same extent defined in his IEP; (3) the District did not work on certain goals during periods of school closures; and (4) C.P.C. did not make progress, or regressed, on his IEP goals. ECF 26 at 6–7. The Court addresses each in turn.

First, contrary to Plaintiff's assertions, the evidence shows that C.P.C. *did* engage in remote instruction. For example, C.P.C.'s special education teacher, Lisa Russell, explained that she worked with the Parent as well as C.P.C.'s mother to ensure he had the resources he needed to access instruction at home. Ms. Russell testified that she and C.P.C.'s parents realized early during remote instruction that C.P.C. performed better in

7

a remote setting when he was one-on-one. *See* R. at 538–39. Ms. Russell testified that she adjusted to this realization by including C.P.C. in a larger lesson, and then had him break out to a one-on-one session with either herself or a paraprofessional. *Id*. at 539. Ms. Russell provided examples of lessons in which C.P.C. participated, and she demonstrated how C.P.C.'s progress was monitored. *See id*. at 393–405, 474–76. Additionally, C.P.C.'s speech and language pathologist, Issac Wang, testified that C.P.C. engaged well with remote instruction in his speech sessions. *Id*. at 649–50. Mr. Wang primarily provided one-on-one instruction and designed lessons that engaged C.P.C. *Id*. He testified that C.P.C. was able to make progress in his remote setting, and the remote sessions laid a stable foundation for C.P.C. to make accelerated progress when he returned to school in person. *Id*. Accordingly, the Court finds that the ALJ's ruling is not contrary to the evidence in this regard.

With respect to Plaintiff's second argument, Plaintiff makes only a conclusory statement that C.P.C. "did not receive the service minutes that his needs and IEP required" and cites C.P.C.'s service logs without further explanation. *See* ECF 26 at 6–7. As the District points out, however, this documentation in fact provides ample evidence supporting the District's position that C.P.C. was provided the appropriate services. *See* ECF 27 at 26–27 (citing examples). The Court therefore finds no basis to overturn the ALJ's determination in this respect.

Next, Plaintiff argues that the District failed to work on some of the goals contained in C.P.C.'s IEP during periods of remote instruction. While technically correct, this argument does not demonstrate that C.P.C. was denied FAPE. The ALJ considered this

8

issue and determined that the District found ways to adapt and work on each goal in an alternative way. *See* R. at 255. For example, when C.P.C. could not go into the community to purchase items using his dollar up strategy, the District simulated the experience in his classroom. Moreover, when C.P.C. returned to school and when the community started to open back up, the District spent additional time working on those goals. Under the circumstances, and in light of the record evidence indicating that C.P.C. ultimately made progress on each goal in his IEP, the Court is not persuaded that such adaptations constituted a material failure to implement the IEP.

Finally, to the extent that Plaintiff argues that the District failed to provide C.P.C. a FAPE because C.P.C. made insufficient progress on his IEP goals during the relevant period at issue, such an argument fails both on the law and the facts. A court's review under the IDEA concerns "not whether the IEP will *guarantee* some educational benefit, but whether it [was] reasonably calculated to do so." *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1149 (10th Cir. 2008) (emphasis added). The adequacy of an IEP "can only be determined as of the time it is offered to the student," not with the benefit of hindsight. *Id.* Indeed, courts have "warned against engaging in a retrospective analysis of academic achievement in determining the appropriateness of an IEP" because "unfortunately, it cannot always be reasonably expected that progress will occur in such a lock-step manner when a child is suffering from a learning disability." *K.D. by & through Dunn v. Downingtown Area Sch. Dist.*, No. CV 16-0165, 2017 WL 3838653, at *11 (E.D. Pa. Sept. 1, 2017). Accordingly, "it cannot be determined whether an IEP was appropriate solely by evaluating a child's progress or lack of progress under [an] IEP." *Colonial Sch.*

9

*Dist. v. G.K. by & through A.K.*, No. CV 17-3377, 2018 WL 2010915, at *11 (E.D. Pa. Apr. 30, 2018); *see also Colonial Sch. Dist. v. N.S.*, No. CV 19-1311, 2020 WL 1517562, at *13 n.24 (E.D. Pa. Mar. 30, 2020) ("[T]he parents inappropriately focus on [the student's] failure to make meaningful educational progress, particularly her failure to advance with her grade-level and meet IEP goals, instead of focusing on whether [the school] failed to appropriately revise its programs to meet [the student's] needs."). Thus, insofar as Plaintiff argues generally that the District failed to provide C.P.C. a FAPE because he did not make sufficient progress on his various goals, neither the record nor the law supports this allegation.

Moreover, as the District notes, Plaintiff's only evidence in support of this argument is a conclusory statement made by the Parent during the due process hearing, without context or specifics regarding the areas in which he believed C.P.C. to be regressive. *See* ECF 26 at 7. This statement is belied by evidence in the record, which, the ALJ pointed out, indicates that C.P.C. made progress on every goal in his IEP. R. at 249. Significantly, the Parent did not dispute the data in the 2021 IEP outlining C.P.C.'s progress or present any evidence that such data was incorrect. Accordingly, the record clearly establishes that C.P.C. made progress on his IEP goals, and where a child makes progress on his IEP goals, it indicates that he received FAPE. *G.D. v. Swampscott Pub. Schs.*, 27 4th 1, 1011 (1st Cir. 2022).

### B.  Procedural Violations of the IDEA

Plaintiff additionally alleges that from March of 2020 through December of 2020, the District committed procedural violations of the IDEA when it (1) changed C.P.C.'s

placement without prior written notice; (2) failed to provide the Parent an opportunity to meaningfully participate in a decision changing C.P.C.'s placement; and (3) failed to provide educational services in the least restrictive environment ("LRE"). ECF 26 at 8–9.

A child's "placement" with respect to his special education means "the provision of special education and related services and do[es] not mean a specific place, such as a specific classroom or specific school." 1 CCR 301-8, 2220-R-4.03(8)(a). The IDEA requires that a placement decision be made by a group of individuals knowledgeable about the child and the evaluation data that includes the child's parents, and be in conformity with the child's least restrictive environment. 34 C.F.R. § 300.116(a). Additionally, a child's placement must be considered annually, be based on the child's IEP, and be as close as possible to the child's home. 34 C.F.R. § 300.116(a). Importantly, a system-wide administrative decision affecting how education is delivered to all students does not change a child's IEP. *See N.D. v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1116 (9th Cir. 2010).

Relying on the foregoing definitions of "placement," as well as guidance issued by the United States Department of Education ("DOE") and the Colorado Department of Education ("CDE") regarding the implementation of special education programming during the Covid-19 pandemic, the ALJ concluded that the "evidence [did] not demonstrate that District changed or altered the kinds of services provided to [C.P.C.] by the IEP." R. at 259. The ALJ went on to state that she "conclude[d] the change in delivery method to online/remote learning during March 2020 through December 2020, particularly in light of the Governor's Orders to close all schools to in-person learning from March

2020 through June 2020, was not a change in placement." *Id*. Plaintiff cites no legal authority or record evidence that undermines the ALJ's determination as to this issue. Accordingly, the Court affirms the ALJ's holding that C.P.C.'s placement was never changed. And because C.P.C.'s placement did not change, the ALJ correctly determined that no prior written notice or parental input was required. *Id*.

Finally, Plaintiff alleges that the District failed to educate C.P.C. in the LRE because schools moved to remote instruction. The Court disagrees. The LRE "is a specific statutory mandate" that requires school districts to educate students with disabilities with their general education peers to the maximum extent appropriate. *L.B. ex rel. K.B. v. Nebo Sch. Dist*., 379 F.3d 966, 976 (10th Cir. 2004); 34 C.F.R. § 300.114. A child's placement for special education purposes means the child's place on the "LRE continuum." 34 C.F.R. § 300.115. The LRE expresses the amount of time the child spends with, or is in the same environment as, the child's regular education peers. *See* R. at 256 (citing 34 C.F.R. § 300.114).

After careful consideration of the record evidence, the ALJ determined that C.P.C. was educated in the LRE. *Id*. at 257. In so finding, the ALJ noted that, had C.P.C. attended school in person from March 2020 through June 2020, his LRE could have been considered "more restrictive," as no general education students would have been present. *Id*. at 256. Moreover, the ALJ recognized that even with the schedule changes, C.P.C. received instruction with his general education peers for a time comparable to that outlined in his IEP. *Id*. at 257. Plaintiff offers nothing more than conclusory statements in an attempt to discount the ALJ's findings of fact. The record is clear that the ALJ

considered the evidence and testimony, and based on careful review, concluded that C.P.C. "received his education in the least restrictive environment, consistent with the requirements of his IEP for March 2020 through December 2020." *Id*. Accordingly, the Court finds no basis to overturn the ALJ's decision on this issue.

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff has not met his burden of demonstrating that the District failed to provide C.P.C. with a FAPE. Because Plaintiff has not established any violation of the IDEA, the decision of the ALJ is **AFFIRMED**.

DATED: December 21, 2023

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge